UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES NEWMAN,                    :    CIVIL NO. **1:04-CV-2391**
                                 :
              Plaintiff          :    (Magistrate Judge Smyser)
                                 :
       v.                        :
                                 :
RELIASTAR LIFE INSURANCE         :
COMPANY,                         :
                                 :
              Defendant          :

<u>**MEMORANDUM OPINION**</u>
<u>**AND**</u>
<u>**ORDER**</u>

     This case was initiated by a complaint filed on
November 1, 2004.  The plaintiff is James A. Newman, a
Shippensburg, Pennsylvania resident, who was employed by Spar
Group, Inc., Tarrytown, New York.  He was as a part of his
employee benefit package insured under a long term disability
policy issued by the defendant, ReliaStar Life Insurance
Company.  The plaintiff claims that the defendant wrongly
refused to pay a claim made by the plaintiff for long term
disability benefits under the policy.  The defendant is a
Minnesota insurance company.  The complaint is brought under
the Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001, *et seq.*   The parties have consented to
proceed with a magistrate judge presiding.  28 U.S.C. § 636(c).

     We find that this suit is a suit for benefits pursuant
to 29 U.S.C. § 1132(a)(1)(b) and that this court has
jurisdiction over this civil action under 29 U.S.C. § 1132.

A trial has been set for August 1, 2005.

A motion for summary judgment was filed by the defendant on April 29, 2005.  Doc. 13.  A LR 56.1 statement of material facts not in dispute was filed.  Doc. 20.  A package of summary judgment exhibits was filed.  Doc. 14.  A brief in support of the motion was filed.  Doc. 14.  A request for oral argument was filed.  Doc. 16.  The plaintiff filed a brief in opposition to the defendant's motion on May 6, 2005.  Doc. 27.  A reply brief was filed by the defendant on May 20, 2005.  An oral argument was held on June 9, 2005.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir. 1992).  After such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact.  Rather, the nonmoving party must go beyond the pleadings and offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); Fed.R.Civ.P. 56(e).  "Once the moving party

2

has carried the initial burden of showing that no genuine issue of material fact exists, [citation omitted] the nonmoving party . . . 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'" *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (quoting *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992)).

This case involves the court in a review of a denial of a request for benefits under an ERISA plan by an insurance company.  The material facts are presumably not in dispute, since under applicable law the court's function is to conduct a review of the same record that was considered by the decision maker.  The court will need to determine which party is entitled to judgment as a matter of law, and what the nature and scope of the judgment must be.

The court must determine whether ReliaStar's decision to deny the plaintiff's application was arbitrary and capricious.  A decision that is made by an independent decision maker to deny benefits should not be overturned unless it is without reason, unsupported by substantial evidence or erroneous as a matter of law.  *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000).  It is not in dispute here that the insurer made the decision on the plaintiff's application.  There was not an independent decision maker.  The court must employ a closer scrutiny than would be

applicable if there had been an independent decision maker because the insurer ReliaStar, the defendant, both funds and administers benefits.  *Id*. At 378.  Therefore, this decision is to be subjected to scrutiny to determine whether it is without reason, unsupported by substantial evidence or legally erroneous, and it must be subjected to a "closer scrutiny" as well.  For the reasons set forth below, we find the decision to be without reason and not to be supported by substantial evidence.

As LR 56.1 provides, in that the plaintiff has not filed a LR 56.1 statement, the defendant's unopposed statement of facts is deemed to be admitted.  The statements of fact contained in the defendant's uncontested LR 56.1 statement of facts contain inferences drawn from the record and conclusions of law.  Although we do not consider the proffered inferences to be binding where we must conduct a *Pinto* review, an edited version of the defendant's LR 56.1 statement is set forth as undisputed facts:

1.  ReliaStar issued a group life insurance policy to Spar Marketing Services, Inc., the plaintiff's employer, and the policy provided disability insurance coverage for employees that was a part of Spar's employee welfare benefit plan.

2.  The policy pays benefits when an employee is "Totally Disabled."

4

3.   The policy defines "Totally Disabled" as "unable to do the essential duties of [his or her] own occupation, due to sickness or accidental injury."

4.   The policy provides a description of the claim process.

5.   ReliaStar processes claims and makes payment or issues a denial notice.

6.   ReliaStar furnishes written notice of a claim denial.

7.   An applicant may request one appeal during the 60-day period following receipt of the claim denial.

8.   ReliaStar considers all appeals and issues any final denials.

9.   ReliaStar has final, discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of the Policy.

10.   The plaintiff began working for Spar in August, 1984, and therefore became eligible to participate in Spar's benefit plan.

11.   The plaintiff was hospitalized on February 14, 2003, after suffering upper gastrointestinal bleeding due to gastric ulcers.

12.   The plaintiff was discharged from the hospital on February 26, 2003.

13.   The plaintiff filed a claim for long term disability benefits in July, 2003.

14.   ReliaStar requested the plaintiff's medical records dating back to October, 2002.

15.   ReliaStar specifically asked for copies of all test results.

16.   ReliaStar was provided with records from the plaintiff's primary physician, Dr. Klink, as well as consulting reports from Dr. Radke (cardiologist), Dr. Kumar (neurosurgeon), Dr. Montello (allergist), and Dr. Fedok (head and neck surgeon).

17.   ReliaStar acknowledged that the plaintiff suffered from gastric ulcers that resulted in a twelve-day hospitalization.

18.   The policy contained a 90-day "Benefit Waiting Period."  The employee must be unable to perform the essential

duties of his or her regular occupation for 90 days before he or she can receive benefits.

19.   The plaintiff was found by ReliaStar to have become disabled on February 13, 2003.  Given the 90-day waiting period, the plaintiff was not eligible to receive benefits unless he remained disabled through May 14, 2003.

20.   The determining factor for whether the plaintiff qualified for benefits was not his condition in February, 2003, but rather his condition in May, 2003.

21.   On May 12, 2003, the plaintiff's primary physician observed that his ulcers "are healing nicely."

22.   The plaintiff's job duties were sedentary, did not require heavy lifting and required the plaintiff to walk or stand only occasionally.

23.   ReliaStar found that the plaintiff's medical records did not demonstrate that he was unable to perform the essential duties of his regular, sedentary occupation and denied his claim on October 10, 2003.

24.   The plaintiff's medical records contained information that he had symptoms of chronic fatigue syndrome ("CFS") and sleep apnea.

25.  ReliaStar in its determination considered whether those conditions rendered the plaintiff totally disabled.

26.  The plaintiff had reported that he was diagnosed with CFS in 1988 and sleep apnea in 1999.

27.  Despite the chronic fatigue and sleep apnea symptoms he had reported to his doctors for more than 15 years, the plaintiff was able to continue working until his unrelated hospitalization in February.

28.  The plaintiff's medical records reported symptoms potentially related to CFS and sleep apnea but did not contain the results of any tests or other evaluations of the level or severity of those symptoms.

29.  ReliaStar specifically requested all test results.

30.  ReliaStar denied the plaintiff's claim on October 10, 2003.

31.  ReliaStar notified the plaintiff of his right to appeal the determination and encouraged him to submit additional documentation, including "actual diagnostic test results or findings."

32.  The plaintiff appealed the denial on February 28, 2004.

33.   The plaintiff stated that the only conditions for which he was seeking disability were CFS and sleep apnea.

34.   The plaintiff highlighted several entries in his medical record that he felt proved that he was disabled and asked ReliaStar to re-examine his records.

35.   The plaintiff did not submit any additional medical records or test results in support of his appeal, but did include a letter from his primary physician stating that he was disabled.  The letter did not include any additional medical records or diagnostic test results to support that conclusion.

36.   ReliaStar forwarded the plaintiff's medical records to Dr. Thomas R. Smith, an independent physician who is board certified in internal medicine and endocrinology with 23 years of practice experience.

37.   ReliaStar asked for Dr. Smith's opinion regarding four specific questions related to the plaintiff's condition and any limitations or restrictions that could impact his ability to work in a sedentary work environment.

38.   After reviewing the plaintiff's medical records, Dr. Smith arrived at several conclusions, which he stated in his letter of April 5, 2004 to ReliaStar.  Doc. 14, Exhibit M.

39.   Dr. Smith concluded that the records lacked a basis for the diagnosis of CFS.

40.   Dr. Smith noted that the plaintiff's medical records consistently stated that he had a history of CFS, however, they did not document which symptoms the plaintiff suffered from, how they have changed over time, what evaluations were performed, which treatments had been tried or the results of those treatments.

41.   Dr. Smith concluded that the plaintiff likely did suffer from sleep apnea.  He found that there was no objective documentation in his records to support such a diagnosis.

42.   Dr. Smith stated that there were no records from pulmonary consultants stating what tests were performed, what results and conclusions came from those tests, what therapies ensued, and what recommendations resulted from them.

43.   Dr. Smith was unable to state whether the plaintiff's sleep apnea was severe enough to affect his ability to function.

44.   The plaintiff's medical records provided evidence that his symptoms of CFS or sleep apnea could have been due, at least in part, to use of medication.

45.   On March 4, 2003, the plaintiff had been hospitalized for three days after becoming "somnolent and confused" due to the use of narcotic analgesics supplied by his family physician.

46.   The plaintiff's physician had noted on April 14, 2003 that the plaintiff had an episode of slurred speech and became disoriented after taking three or four Ambien.

47.   The plaintiff's physician had noted that "his wife has now taken the Ambien away from him and he's only allowed two nightly."

48.   Based upon ReliaStar's review of the medical records supplied by the plaintiff, as well as Dr. Smith's conclusions, ReliaStar upheld its prior denial of the plaintiff's claim.

49.   In its denial, ReliaStar explained its decision by stating that the records supplied by the plaintiff did not contain any documentation that his sleep apnea was affecting his ability to resume work or that it was a contributory factor in his cessation of work.

50.   ReliaStar explicitly recognized that additional medical evidence may exist that could support the plaintiff's claim and made an exception to the usual appeals process and provided in an April 15, 2004 letter to the plaintiff that the

plaintiff would have an additional opportunity to submit
medical evidence to support his claim:

> While the Appeal Committee has rendered a final
> determination on your claim, we recognize that since the indepe
> reviewer denoted that there is a lack of
> sufficient evidence to
> support that your Sleep Apnea condition
> precluded you from resuming employment post
> your GI bleed recovery period, additional
> medical evidence may exist. If you feel there
is additional medical evidence which would support that your
Sleep Apnea condition was
> and is disabling, you may submit this evidence
> to the Appeal Committee within the next 30 days.

51.   The plaintiff filed a second appeal on May 2,
2004.  Doc. 14, Exhibit O.

52.   The plaintiff did not submit any additional
medical records or test results.

53.   The plaintiff submitted several pages of articles
from the CFIDS Association of America web site containing
general information about CFS, a summary of his symptoms and
references to his doctor's notes reflecting his reports to his
doctor of his symptoms

54.   ReliaStar did not make any further assessments
concerning the plaintiff's condition and issued a final denial
of his claim.

55.   The plaintiff retained legal counsel and requested
that ReliaStar "hold" its reconsideration of the plaintiff's

claim and informed it that if it did not, the plaintiff would
sue.

56.  ReliaStar notified the plaintiff's legal counsel
that it was unable to take any further action on the
plaintiff's claim as the appeal process had been exhausted and,
in fact, ReliaStar had already granted the plaintiff one more
opportunity to submit support for his claim than was permitted
under the appeal process.

57.  The plaintiff sued ReliaStar seeking payment of
benefits.

Again it is emphasized that, while the defendant's LR
56.1 facts as edited is taken as admitted, the court's duty is
to review the record.  We have reviewed the entire record,
including all exhibits submitted by the defendant with its
summary judgment motion, and in particular those exhibits
submitted with Doc. 14, the defendant's brief, Exhibits A to R.

The policy provides for benefits in the case of a total
disability.  A total disability is the inability to do the
essential duties of one's own occupation due to sickness or
accidental injury.  A "sickness" includes "any physical
illness."  Doc. 14, Exhibit A.  Although the immediate causes
for the plaintiff to stop working in February of 2003 had to do
with gastrointestinal bleeding, the plaintiff's claim under the

policy was ultimately addressed by the defendant as based upon
two physical illnesses, CFS and sleep apnea.  The claim was
denied on October 10, 2003 on the basis that there was not
sufficient evidence in the company's view to demonstrate that
the plaintiff was unable to perform the essential duties of his
regular occupation throughout and beyond the 90-day benefit
waiting period.  Doc. 14, Exhibit H.

       The October 10, 2003 decision explanation does not
reveal the standard of proof employed by the decision maker;
*i.e.*, whether a preponderance of the evidence or some other
standard.  The reasons cited for the decision include the
reason that the plaintiff did not provide objective medical
documentation that he remained impaired after February of 2003.
The decision notes that although the plaintiff had poor sleep
and decreased energy in April and May of 2003, "this was not a
new problem," and the decision places great weight on the fact
that the plaintiff had worked despite insomnia and daytime
fatigue before his February 2003 hospitalization.

       The plaintiff's comprehensive responsive letter
(Exhibit J) gave rise to an independent medical review and
yielded Dr. Smith's letter (Exhibit M) stating that there is
inadequate information from which to draw conclusions as to
appropriate limitations and restrictions for the plaintiff.  An
independent medical evaluation was recommended by Dr. Smith,
the consulting physician.  Dr. Smith stated that he could not

state whether the plaintiff's obstructive sleep apnea was severe enough to affect his ability to function.

In the April 15, 2004 letter to the plaintiff (Exhibit N), the defendant reaffirmed the October 10, 2003 decision. It stated that the plaintiff was found to be disabled from February 14, 2003 to April 12, 2003. The decision finds that the plaintiff's condition of an upper G.I. bleed was a disabling condition, but that neither CFS nor disabling sleep apnea was proven. The decision finds an absence of medical evidence to support the plaintiff's physician's diagnosis of CFS. The decision finds that the plaintiff's exhaustion and fatigue are attributable to his sleep apnea. The decision explained why the medical reviewer had found it to be likely that the plaintiff has sleep apnea. The Appeal Committee stated that the symptoms it attributed to sleep apnea, although they warrant medical treatment, do not affect the plaintiff's ability to resume work and were not a factor contributing to the plaintiff's cessation of working. Noting that there is a medical explanation for why surgery is not indicated, without citing another medical course of treatment, the Committee recognized that the sleep apnea warrants medical treatment.

We find this decision denying the application for benefits[1] to be without reason and to be unsupported by substantial evidence.

First, the defendant's decision is without adequate explanation in that it places weight without explanation or apparent justification upon the fact that the plaintiff's job is sedentary.  The relevance of the job's physical exertional demands to the analysis and decision is not explained.  The defendant implies that fatigue symptoms have vocational significance in the case of a physically exertionally demanding job, but not in the case of a sedentary job.  The fact that the job is sedentary is in relationship to the plaintiff's impairments not shown to be an important factor.  The physical exertional requirements of the job were not asserted by the plaintiff to be a significant issue or problem.  The decision does not provide any explanation of an implicit finding that chronic fatigue and lack of sleep would not interfere with job performance in a sedentary job having the non-exertional requirements of the plaintiff's job.   The decision does not discuss or analyze the non-exertional requirements of the plaintiff's job nor the effect of impairments and limitations claimed by the plaintiff or found by the defendant in relationship to such requirements.

---

[1]
The company's decision is considered to be stated and explained in Exhibits H and N.

Second, the decision repeatedly emphasizes an absence
of objective medical documentation of CFS.  The decision does
not address or disclose the kind(s) of objective medical
documentation of CFS that are being sought or that would be
deemed probative by the decision maker.  The decision does not
address why the credibility of the subjective symptoms being
reported by the plaintiff are not acceptable and why the
plaintiff's statements of his symptoms are not credited.  The
decision does not reveal the understanding of the decision
maker concerning the objective tests that should be done; *i.e.*,
what the tests are, what they would show and why it would be
material.

Third, the decision (as explained in the October 10,
2003 letter) irrationally cites healing of the plaintiff's
gastric ulcers, a regular heart rhythm, a lack of growth of a
pancreatic lesion and controlled blood pressure as evidence
that the plaintiff is no longer impaired.  The plaintiff did
clearly continue to be impaired, whether or not he was able to
perform the essential duties of his regular job.

Fourth, the decision fails to explain why the defendant
considers the fact that decreased energy and poor sleep are not
a new problem and the fact of a 1999 sleep apnea diagnosis and
of a 1988 CFS diagnosis as evidence that the plaintiff's
subjective symptoms are less severe than the plaintiff has
described them as being.

Fifth, the decision notes that the plaintiff did not have surgery that could help his sleep apnea, but does not consider the reasons given by the plaintiff for not having surgery.

Sixth, the decision places weight on the plaintiff's prior performance of work despite suffering then from sleep apnea and CFS, without explaining why this is a factor that weighs against the claim any more than it is a factor that weighs in support of the claim.  The plaintiff's claim to be disabled now may as well be seen to be entitled to greater credit when considered against a background of working despite the presence of symptoms as seen to imply a lesser will to work or a lesser credibility.

Additional aspects of the decision making process and of the decision are also worth noting.

The plaintiff's brief places particular emphasis upon the April 5, 2004 report of Dr. Smith, the reviewing physician, reporting to the defendant that the plaintiff likely has sleep apnea and that it may be severe enough to affect his ability to function.  The defendant's denial of the plaintiff's claim after receipt of this report, rather than a further examination of the plaintiff as recommended by the reviewing physician, is not reasonably explained by the defendant.  If the defendant knew what tests it would give weight to, it did not say so; yet, inferences were drawn against the validity of the claim

based upon a perception that necessary diagnostic testing was not completed.

The plaintiff had been found by the Social Security Administration to be unable as the result of an impairment to perform any substantial gainful activity, not unable only to perform his past relevant sedentary job but also unable to perform any other skilled or unskilled sedentary job in the national economy.  Social Security disability adjudications are not easily generalized as irrationally deferential to claimants.  The decision by the defendant does not consider or mention the Social Security Administration disability adjudication.   It should have been considered.

We do not intend to suggest that we are finding that there are particular fact finding procedures and criteria that exist in the law but that were not followed here.  That is not the case.  Our review is necessarily based upon the general principles stated in *Pinto, supra*.  But we must observe that the decision-making path of the defendant appears to have been unoccupied with directional signs and guideposts to assist and to inform the decision-making process.  There are not definitions of impairments.  There is not a set of useful decision making presumptions, criteria and steps, either generally used by the defendant or used only in this decision. The absence of fact finding procedures and criteria is not in violation of any legal requirements.  However, the absence of procedural and substantive structure in the defendant's process

does inherently impair the decision maker's ability to demonstrate a reasoned decision based upon substantial evidence.

The defendant's inability to point to a principled and rational set of guidelines and criteria for the consideration and determination of the claim in the context of this case gives rise to an inference that the decision made to deny the claim is arbitrary.  In the absence of guidelines and criteria, there was not a clear indication to the plaintiff of the kinds of information and tests being sought by the insurer.  Thus, while the plaintiff's May 2, 2004 letter (Doc. 14, Exhibit O) was from his perspective reasonably responsive and informative, to the defendant the plaintiff's information was "inconsequential."  (Doc. 14, Exhibit P).  Addressing the subject of the diagnostic criteria for CFS, the defendant argues that the plaintiff's submission of CFS diagnostic criteria in his May 2, 2004 letter did not advance the presentation of his claim.  But the defendant has not revealed the diagnostic criteria that it used nor has it explained why it found inconsequential the criteria that the plaintiff proffered.  What definition of CFS was the defendant using? The defendant also does not address how or why it has determined that the plaintiff's reports of symptoms to his doctor on various dates, as referred to and collated in his May 2, 2004 letter, is not the sort of medical evidence that customarily goes into a CFS diagnosis.   The defendant appears not to accept that CFS is diagnosed largely by the occurrence

of a statistically sufficient number of symptoms in the patient, which is the nature of the diagnostic standard described by the plaintiff in his letter.  The defendant may be correct in that, but we can not know if that is so if the defendant does not state what its definition is of CFS.  The defendant's measure of whether the plaintiff is disabled appears to have been whether the plaintiff has CFS, as opposed to an approach that considered his subjective symptoms directly independent of a CFS diagnosis.  Therefore, a definition of CFS was critical.  If the decision is not made by application of a set of standards, rules and criteria, there is not a basis upon which to find that it is not arbitrary.

The defendant's denial of the plaintiff's claim for disability benefits is arbitrary and capricious if it is not supported by reasons or if it is not supported by substantial evidence.  CFS and sleep apnea are impairments that may not provide objective diagnostic features in the way that many other impairments do.  CFS and sleep apnea are not said by the defendant not to be qualifying sicknesses under the policy.  The defendant does not say what kind of diagnostic test(s) or procedures it is requiring.  It simply states that the plaintiff did not provide enough.  The defendant does not provide a usable description of what might be supplied.

We are not asked to determine whether either CFS or sleep apnea is a "sickness" under the policy.  The defendant decided that each is a sickness under the policy.  The

21

defendant does not say that the kinds of symptoms reported by the plaintiff are not the kinds of symptoms associated with CFS and/or sleep apnea.  We therefore for purposes of the defendant's summary judgment motion take it as accepted by the defendant that the kinds of symptoms reported by the plaintiff are the kinds of symptoms associated with CFS and/or sleep apnea.  If the defendant does not accept these symptoms as diagnostic but does not say so, that is arbitrary.  The defendant did not specifically or directly find that the plaintiff does not have symptoms of the nature or intensity reported by the plaintiff to his doctors and to the defendant.

The defendant emphasizes in the October 10, 2003 letter (Doc. 14, Exh. 14) the plaintiff's April 14, 2003 report to his doctor that "cognitively" he felt "sharp and intact."  This one report of a mental state on a particular date at a particular time does not sustain a disability benefits denial that is otherwise not supported by evidence.  There is no record of any questioning of the plaintiff for purposes of this claim about this statement reportedly made to the doctor on April 14, 2003. The plaintiff's explanation in his February 28, 2004 letter (Doc. 14, Exh. J) provides a different explanation, and suggests that the defendant needed to obtain testing or a comprehensive statement from the plaintiff to assure that the evaluation of the claim would be based upon a full and fair record.

The burden to establish eligibility for benefits under the policy was on the plaintiff, to show to the defendant that he had a sickness that prevented him from performing his usual occupation.  The defendant's position is that the plaintiff failed to carry this burden because the defendant's requests for additional medical evidence were not answered.  However, the plaintiff's attempt to submit a further explanation of the medical evidence supporting his CFS and sleep apnea based claim was deemed inconsequential, and the defendant did not provide a reasonable explanation for that decision.

The plaintiff left his job with Spar in February of 2003 and has not returned to work.  He considers himself to be unable to perform his ordinary job because of chronic fatigue and sleep apnea.  The question presented to the defendant was whether the plaintiff is so chronically fatigued that he can not perform his ordinary work.  The defendant needed to decide, first, whether the plaintiff's description of his chronic fatigue, assuming its truth, describes a level of fatigue that renders him unable to perform his work.  If not, the claim would have properly been denied.  If so, then the next question to be addressed and answered is whether the plaintiff's description of his fatigue symptoms is credible.  The sickness that the plaintiff claims to have disabled him is chronic fatigue.  The determination whether the plaintiff has CFS may be useful, but the defendant would need to determine in any event whether the plaintiff's fatigue symptoms are of such a chronic and severe nature as to render him unable to perform

his job.  The defendant would still need to consider a person having the capacities that the plaintiff is found to have, the exertional and non-exertional demands of his job, and whether in light of these he can perform the job.

Based upon the record, the defendant is not entitled to summary judgment because the denial of the plaintiff's application for disability benefits is arbitrary, without reason and unsupported by substantial evidence.  The decision to deny the claim of the plaintiff that he is unable to perform his regular job is without reason and is unsupported by substantial evidence.  *Ipso facto*, the decision has not been shown to withstand a "closer scrutiny" as required by *Pinto, supra*.

It will accordingly be ordered that the defendant's motion for summary judgment be denied and that the parties submit memoranda addressing the issue whether the court should order the payment of benefits or should order the defendant to conduct a further consideration of the application, addressing whether the order should include an order for attorney's fees and otherwise addressing the form and content of a final order in light of this decision.

## ORDER

For the foregoing reasons, **IT IS ORDERED** that the defendant's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff and the defendant shall on or before July 11, 2005 each file a memorandum addressing the issue of the content and form of the order to be entered by the court.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   June 27, 2005.